IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

VICTORIA G. HOLLAND                                                    PLAINTIFF

vs.                               Civil No. 5:07-cv-05068

MICHAEL J. ASTRUE                                                DEFENDANT
Commissioner, Social Security Administration

## MEMORANDUM OPINION

Victoria G. Holland ("Plaintiff") brings this action pursuant to § 205(g) of Title II of the Social Security Act ("The Act"), 42 U.S.C. § 405(g) (2006), seeking judicial review of a final decision of the Commissioner of the Social Security Administration ("SSA") denying her application for Disability Insurance Benefits ("DIB") under Title II of the Act. The parties have consented to the jurisdiction of a magistrate judge to conduct any and all proceedings in this case, including conducting the trial, ordering the entry of a final judgment, and conducting all post-judgment proceedings. (Doc. No. 6).[1] Pursuant to this authority, the Court issues this memorandum opinion and orders the entry of a final judgment in this matter.

**1. Background:**

Plaintiff's application for DIB now before this Court was protectively filed on January 6, 2003. (Tr. 45-47, 54). This application alleges an onset date of December 4, 2002. (Tr. 45). In her application and in other documents filed with the SSA, Plaintiff alleged she was disabled due to

---

[1] The docket numbers for this case are referenced by the designation "Doc. No." The transcript pages for this case are referenced by the designation "Tr."

ruptured discs at C4-5 and C5-6 levels; "degeneration"[2]; arthritis; headaches; pain in her neck, shoulders, arms, back, and legs; depression; irritable bowel syndrome; acid reflux disease; restless leg syndrome; and fibromyalgia.  (Tr. 45-47, 58, 84).

   Plaintiff's application was initially denied on April 17, 2003 and was denied again on reconsideration on September 4, 2003.  (Tr. 24-31, 34-35).  Plaintiff requested an administrative hearing which was held on November 17, 2004 in Harrison, Arkansas.  (Tr. 320-343).  Plaintiff was present and was represented by an attorney, Frederick Spencer, at this hearing.  *See id.*  Plaintiff's friend, Lisa Secora, and Plaintiff's husband, Gary Holland, were also present at the hearing.  *See id.*  Only Plaintiff testified at this hearing.  *See id.*  At the time of this hearing, Plaintiff was fifty-one years-old, which is classified as a "person closely approaching advanced age" under 20 C.F.R. § 404.1563(d) (2007).  (Tr. 325-326).  At the time of this hearing, Plaintiff's highest academic achievement was a high school diploma.  (Tr. 326).

   On June 8, 2005, the ALJ entered an unfavorable decision denying Plaintiff's request for DIB.  (Tr. 11-21).  In this opinion, the ALJ determined Plaintiff met the requirements for a period of disability and for DIB and was insured for benefits through the date of his decision.  (Tr. 20, Finding 1).  The ALJ determined that Plaintiff had not engaged in Substantial Gainful Activity ("SGA") since her alleged onset date.  (Tr. 20, Finding 2).  The ALJ determined that Plaintiff's osteoarthritis of her spine, cervical disc disease with bilateral C6 nerve root irritation, bilateral paresthesias in her upper extremities, bilateral thoracic outlet syndrome, mild left carpal tunnel syndrome, fibromyalgia, and restless leg syndrome were considered "severe" impairments.  (Tr. 20, Finding 3).  The ALJ determined that, although Plaintiff did have a history of treatment for these

---

[2] Presumably, with the term "degeneration," Plaintiff was referring to "degenerative disc disease."  (Tr. 84).

severe impairments, she did not have an impairment or a combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, Regulations No. 4 ("Listings").  (Tr. 20, Finding 4).

The ALJ also evaluated Plaintiff's subjective complaints and determined Plaintiff's Residual Functional Capacity ("RFC").  (Tr. 20, Findings 5-6).  In evaluating Plaintiff's subjective complaints, the ALJ determined that Plaintiff's allegations regarding her limitations were not "totally credible."  (Tr. 20, Finding 5).  The ALJ based this determination upon several different findings: (1) Plaintiff's medical records were inconsistent with her claimed limitations; (2) Plaintiff's daily activities were inconsistent with her claimed limitations; and (3) Plaintiff's testimony at the administrative hearing regarding her Past Relevant Work ("PRW") was inconsistent with her claim that she was totally disabled. (Tr. 14-20).  Based upon these findings, the ALJ determined Plaintiff retained the ability (RFC) to perform the following:

> [L]ift and/or carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk eight hours during a workday and sit eight hours during a workday.  In addition, the claimant can occasionally do simple grasping, fine manipulation, handling, feeling and pushing/pulling with her hands.

(Tr. 20, Finding 6).

Based upon Plaintiff's testimony and the VE's responses to his interrogatories, the ALJ also determined that Plaintiff could perform her PRW.  (Tr. 20, Finding 7).  Plaintiff's PRW included thirty years of work at Baxter Health Care in the plastics field as a quality control inspector and as an extruder machine operator. (Tr. 121). Plaintiff testified at the administrative hearing that she was able to perform her work at Baxter Health Care as a quality control inspector because, in performing this job, she was not required to do much heavy lifting.  (Tr. 332-333).  Plaintiff testified that she was not required to do much heavy lifting at this job because her coworker assisted her in lifting the

heavy objects while she performed more of the "paperwork type things." *See id.* Plaintiff, however, testified that she was eventually released from this job and moved to another job that involved much heavier lifting because she was "not doing . . . [this first] . . . job to full capacity." *See id.* Plaintiff testified that she could not perform her second job as an extruder machine operator because she could not do the heavy lifting required. *See id.*

On March 14, 2005, the ALJ submitted written interrogatories to Vocational Expert ("VE") David O'Neal in order to determine whether Plaintiff was capable of performing her PRW.[3] (Tr. 20, 120-125). In his responses to these interrogatories, the VE stated that even with all of Plaintiff's limitations (her RFC) and considering her age, educational background, and work experience, Plaintiff still retained the ability to perform her PRW as a quality control inspector (her first job). (Tr. 121). Based upon Plaintiff's testimony about her PRW, her RFC, and the VE's responses to the interrogatories, the ALJ determined that Plaintiff's "medically determinable impairments . . . [did not] . . . prevent . . . [Plaintiff] . . . from performing her past relevant work." (Tr. 21, Finding 8). The ALJ also determined that Plaintiff was "not under a 'disability' as defined by the Social Security Act, at any time through the date of the decision." (Tr. 21, Finding 9). On January 31, 2007, the Appeals Council declined the review the ALJ's June 8, 2005 hearing decision. (Tr. 3-5). Subsequently, Plaintiff filed the present action. (Doc. No. 1). The parties consented to the jurisdiction of this Court on September 10, 2007. (Doc. No. 6). Plaintiff and Defendant have both filed appeal briefs. (Doc. Nos. 5, 7). This case is now ready for decision.

**2. Applicable Law:**

In reviewing this case, this Court is required to determine whether the Commissioner's

---

[3] The ALJ did not hear testimony from a vocational expert on this issue.

4

findings are supported by substantial evidence on the record as a whole. *See* 42 U.S.C. § 405(g) (2006); *Ramirez v. Barnhart,* 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance of the evidence, but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. *See Johnson v. Apfel,* 240 F.3d 1145, 1147 (8th Cir. 2001). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome or because the Court would have decided the case differently. *See Haley v. Massanari,* 258 F.3d 742, 747 (8th Cir. 2001). If, after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *See Young v. Apfel,* 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving his or her disability by establishing a physical or mental disability that lasted at least one year and that prevents him or her from engaging in any substantial gainful activity. *See Cox v. Apfel*, 160 F.3d 1203, 1206 (8th Cir. 1998); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act defines a "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382(3)(c). A plaintiff must show that his or her disability, not simply his or her impairment, has lasted for at least twelve consecutive months. *See* 42 U.S.C. § 423(d)(1)(A).

To determine whether the adult claimant suffers from a disability, the Commissioner uses the familiar five-step sequential evaluation. He determines: (1) whether the claimant is presently

5

engaged in a "substantial gainful activity"; (2) whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations (if so, the claimant is disabled without regard to age, education, and work experience); (4) whether the claimant has the Residual Functional Capacity (RFC) to perform his or her past relevant work; and (5) if the claimant cannot perform the past work, the burden shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform. *See Cox,* 160 F.3d at 1206; 20 C.F.R. §§ 404.1520(a)-(f). The fact finder only considers the plaintiff's age, education, and work experience in light of his or her RFC if the final stage of this analysis is reached. *See* 20 C.F.R. §§ 404.1520, 416.920 (2003).

**3. Discussion:**

Plaintiff brings the present appeal arguing that the ALJ erred by (1) concluding the Plaintiff did not have a "severe" mental or digestive impairment; (2) failing to address whether Plaintiff met the requirements of Listing 1.04; (3) failing to evaluate the combined effects of all of Plaintiff's mental and physical impairments; and (4) failing to properly accept or even discuss the opinions of Plaintiff's treating doctors. (Doc. No. 5, Pages 6-19). In response, Defendant argues that Plaintiff did not establish that her alleged depression and digestive problems were severe impairments. (Doc. No. 7, Pages 3-4). Defendant argues that Plaintiff failed to establish she had an impairment or a combination of impairments that were of Listing-level severity. *See id.* at 4-6. Defendant also argues that the ALJ properly determined that Plaintiff could return to her PRW as a quality control inspector and that the ALJ properly supported his disability determination by substantial evidence in the record. *See id.* at 6-9. Because this Court finds that the ALJ erred in finding that Plaintiff did

not have a severe mental impairment, this Court will only address Plaintiff's first argument.

### A. "Severe Impairment" Standard

An impairment is considered "severe" if that impairment is more than slight and affects the claimant's ability to do basic work activities. *See Householder v. Bowen,* 861 F.2d 191, 192 n.1 (8th Cir. 1988). This standard is a low *de minimis* standard such that *only if* a claimant's impairment has no more than a *de minimis* impact on his or her ability to work, then his or her impairment is not severe. *See Miller v. Astrue,* No. 05-4409, 2007 WL 1452966, at *1 (8th Cir. May 18, 2007) (unpublished); *Nicola v. Astrue,* 480 F.3d 885, 887 (8th Cir. 2007). *See also* Social Security Ruling 96-3p (noting that "an impairment(s) is considered 'not severe' if it is a slight abnormality(ies) that causes no more than minimal limitation in the individual's ability to function independently, appropriately, and effectively in an age-appropriate manner"). However, if an ALJ improperly characterizes a severe impairment as non-severe and thereby fails to consider that impairment in later steps of the five-step analysis, the district court should reverse and remand that case to the ALJ so that the ALJ can properly evaluate that severe impairment. *See Nicola,* 480 F.3d 885, 887 (8th Cir. 2007).

### B. Summary of the Relevant Medical Evidence

On November 11, 1981, Plaintiff was injured while working at Baxter Laboratories. (Tr. 134-135, 307-311, 329-331). Plaintiff's jacket was caught in one of the machines, and Plaintiff fractured two of her ribs and injured her neck and left arm. (Tr. 132-135, 307-311, 329-331). Plaintiff was unable to work for three months as a result of these injuries. (Tr. 329-331). Thereafter, in February of 1982, Plaintiff returned to working full-time with a five percent impairment in her

ability to work.[4]  (Tr. 329-331).

Nearly two decades later,[5] from January 31, 2001 until January 30, 2003, Plaintiff was treated by Dr. Kevin Adkins for her headaches, Gastroesophageal Reflux Disease (GERD)[6], Barrett's esophagitis,[7] possible fibromyalgia, depression, a sebaceous cyst, and various other problems.  (Tr. 146-173).  On March 27, 2001, Dr. Adkins determined that Plaintiff may suffer from fibromyalgia and prescribed her an antidepressant, Zoloft, in an attempt to alleviate her chronic discomfort.  (Tr. 171).  On October 18, 2001, Dr. Adkins noted that Plaintiff suffered from "probable depression" and increased Plaintiff's dosage of Zoloft.  (Tr. 167).  On November 1, 2001, Plaintiff reported to Dr. Adkins that she was "having a lot of problems with agitation" and diagnosed her with an anxiety disorder and a "possible hormone imbalance."  (Tr. 166).  On December 13, 2001, Dr. Adkins reported that Plaintiff's condition was not improving significantly with Zoloft, and Dr. Adkins prescribed Plaintiff Celexa to alleviate her symptoms of depression.  *See id.*  On January 10, 2002, Dr. Adkins reported that Plaintiff suffered from a number of different non-specific problems and that were "due probably to her fibromyalgia and depression."  (Tr. 165).  There are no further references to Plaintiff's depression in Dr. Adkin's medical records, which date until January 30, 2003, and there is no indication that Plaintiff ever recovered from her depression.

On July 30, 2003, Dr. Nancy Bunting conducted a consultative examination of Plaintiff and

---

[4] Plaintiff's medical records, however, indicate that she had a twenty percent (20%) permanent physical impairment and loss of physical function in her whole body.  (Tr. 132-133).

[5] No medical records from 1982 until 2000 are included in the transcript.  (Tr. 129-319).

[6] "GERD" is defined as "Incompetence of the lower esophageal sphincter allows reflux of gastric contents into the esophagus, causing burning pain.  Prolonged reflux may lead to esophagitis, stricture, and rarely metaplasia.  Diagnosis is clinical, sometimes with endoscopy, with or without acid testing.  Treatment involves lifestyle modification, acid suppression using proton pump inhibitors, and sometimes surgery."  *The Merck Manual* 112 (18th ed. 2006).

[7] "Esophagitis" is defined as "Inflammation of the esophagus."  *PDR Dictionary* 670 (3rd ed. 2006).

completed a full report entitled a "Mental Status and Evaluation of Adaptive Functioning." (Tr. 270-274). In her report, Dr. Bunting diagnosed Plaintiff with "Major Depression controlled with medication," but Dr. Bunting did not state in her report which medication controlled Plaintiff's depression. *See id.* The only antidepressant listed in Dr. Bunting's report was Zoloft. (Tr. 270). This consultative report and the medical records from Dr. Adkins (summarized above) are the only medical records that directly address Plaintiff's depression.

### C. Plaintiff's Mental Impairment

In the present action, the ALJ found that Plaintiff's mental impairment was not a severe impairment. (Tr. 13, 20, Finding 3). The ALJ based this finding on the fact that Plaintiff's medical records indicated that Plaintiff's depressive symptoms were controlled with medication. In response to that finding, Plaintiff argues in her appeal brief that the ALJ erred as a matter of law when he found that Plaintiff did not have a severe mental impairment. (Doc. No. 5, Pages 6-9). Plaintiff argues that the current standard for establishing a severe impairment is a *de minimis* standard. *See id.* Plaintiff claims that she has met this low standard for establishing that her claimed mental impairment is "severe." *See id.*

In response to Plaintiff's argument, Defendant argues that the ALJ's decision–that Plaintiff's mental impairment was not "severe"–is supported by substantial evidence in the record. (Doc. No. 7, Pages 3-4). Specifically, Defendant argues that Plaintiff's medical and treatment records establish that her depression and anxiety-related symptoms are controlled with medication, and they only mildly impact her in her ability to work. *See id.*

Plaintiff's medical records, however, clearly indicate that Plaintiff is more than *mildly restricted* in her ability to work due to this impairment. Plaintiff's doctors indicated in several

different reports that Plaintiff suffered from *depression* and was taking medication for depression. (Tr. 165-167, 171). There is no indication that Plaintiff's depression was controlled with medication. (Tr. 166). Importantly, even Dr. Bunting, a consultative examining physician, found that Plaintiff suffered from "*Major Depression* controlled with medication." (Tr. 272). Despite Dr. Bunting's claim that Plaintiff's depression was "controlled with medication," there is no indication in her report that Plaintiff's depression was actually controlled with the use of medication. (Tr. 270-274). The only antidepressant Dr. Bunting found Plaintiff had taken was Zoloft. (Tr. 270). However, Plaintiff's treating physician, Dr. Adkins, specifically found that Zoloft did not adequately treat Plaintiff's depression. (Tr. 166). As a treating physician, Dr. Adkin's opinion is entitled to greater weight than Dr. Bunting's consultative opinion. See 20 C.F.R. § 404.1527(d)(2). Because this impairment meets the *de minimis* standard for a severe impairment, the ALJ erred in concluding that Plaintiff did not suffer from this severe impairment.

**5. Conclusion:**

Based on the foregoing, the undersigned finds that the decision of the ALJ, denying benefits to Plaintiff, is not supported by substantial evidence and should be **reversed and remanded**. A judgment incorporating these findings will be entered pursuant to Federal Rules of Civil Procedure 52 and 58.

**ENTERED this 15th day of January, 2008.**

/s/   Barry A. Bryant
Honorable Barry A. Bryant
United States Magistrate Judge